UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAMIEN HALL,

  Petitioner,

  v.

SAN FRANCISCO SUPERIOR COURT[1],

  Respondent.
_____/

No. C 09-5299 PJH

**ORDER DENYING
MOTION FOR RELEASE**

Petitioner Damien Hall's motion for release pending this court's decision on his November 6, 2009 petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is currently before the court. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court DENIES the motion.

**BACKGROUND**

Hall was charged with forcible penetration of the genital opening of a person by a foreign object pursuant to California Penal Code § 289(a)(1). On December 14, 2006, a jury in the San Francisco County Superior Court convicted Hall of the lesser-included offense of assault with intent to commit forcible sexual penetration in violation of California Penal Code § 220. On September 19, 2007, the trial court sentenced him to two years in prison. Hall appealed, and the California Court of Appeal affirmed on June 16, 2009, and the California Supreme Court denied review on September 30, 2009.

---

[1]The court acknowledges respondent's objection that it has been improperly named. However, given petitioner's representation in his reply brief that he is currently housed in the San Francisco County Jail awaiting transfer to the CDCR, and will amend to reflect the actual custodian once transfer occurs, the court takes no action at this time.

Hall, who is represented by counsel, filed his federal habeas petition on November 6, 2009. At the time he filed his petition, Hall had been released on bail. However, he has since been remanded into state custody. On January 27, 2010, Hall filed a motion for release pending decision on his federal habeas petition, the state filed its opposition on February 3, 2010, and Hall filed a reply on February 10, 2010. The state's answer to Hall's petition on the merits, along with the record, are due March 26, 2010, and any traverse is due April 26, 2010.

## DISCUSSION

### A.  Legal Standards

Although the Ninth Circuit has not addressed the particular issue, Federal Rule of Appellate Procedure 23, which grants the district court jurisdiction concurrent with the appellate court over the custody of a habeas petitioner, *see Stein v. Wood*, 127 F.3d 1187, 1190 (9th Cir. 1997), appears to apply only to motions for release filed *after* the district court has issued a decision on the merits of a habeas petition, when the district court's decision is on appeal.[2] *See Landano v. Rafferty,* 970 F.2d 1230, 1238 (3d Cir. 1992). Accordingly, there are no federal statutes or rules that address the district court's authority to grant release pending its decision on the merits of the petition.

---

[2]Federal Rule of Appellate Procedure 23 provides in pertinent part:

(b) **Detention or Release Pending Review of Decision Not to Release.** While a decision not to release a prisoner is under review, the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court, may order that the prisoner be:

(1) detained in the custody from which release is sought;

(2) detained in other appropriate custody; or

(3) released on personal recognizance, with or without surety.

(c) **Release Pending Review of Decision Ordering Release.** While a decision ordering the release of a prisoner is under review, the prisoner must--unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise--be released on personal recognizance, with or without surety.

The Ninth Circuit similarly has not decided whether a prisoner may be released on bail during the pendency of his district court habeas action. *See In re Roe*, 257 F.3d 1077, 1080 (9th Cir. 2001). In its first related decision, the Ninth Circuit noted that the district court may have the authority to release a state prisoner on bail pending resolution of a habeas proceeding, and relied on the Supreme Court's decision in *Aronson v. May*, 85 S.Ct. 3, 5 (1964), for the applicable standards. *See Land v. Deeds*, 878 F.2d 318, 318-19 (9th Cir. 1989).

In *Aronson*, relied on by the *Land* court, the Supreme Court recognized that the bail standard for a person seeking collateral review is different from the standard applied to a pretrial detainee. 85 S.Ct. at 5. Persons accused of crimes and awaiting trial are presumed innocent and thus enjoy an Eighth Amendment right to be free from excessive bail. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). In contrast, a habeas corpus petitioner requesting postconviction relief has already been convicted and thus is no longer presumed innocent and no longer enjoys a constitutional right to freedom, however conditional. *Aronson*, 85 S.Ct. at 5.

The federal prisoner in *Aronson* sought release on bail *pending appeal* from the district court's denial of his petition for writ of habeas corpus filed under 28 U.S.C. § 2255. 85 S.Ct. at 5. Relying in part on an earlier decision from the Ninth Circuit, Justice Douglas provided the following standard in determining when a habeas corpus petitioner can be released on bail:

> [I]t is therefore necessary to inquire whether, in addition to there being *substantial questions presented by the appeal*, there is some *circumstance making this application exceptional and deserving of special treatment* in the interests of justice.

*Id.* (citing *Benson v. California*, 328 F.2d 159, 162 (9th Cir.1964)) (emphasis added).[3]

---

[3] In *Benson,* relied on by *Aronson,* a state prisoner sought bail *pending appeal* of the district court's denial of his habeas petition. 328 F.2d at 160. The Ninth Circuit affirmed the district court's denial of his request for bail explaining, "[i]t would not be appropriate for us at this stage of the proceeding to enlarge this petitioner on bail even if we found that the allegations of his petition for habeas corpus made out a clear case for his release. Something more than that is required before we would be justified in granting bail." *Id.* at 162. In a

3

Unlike *Aronson*, the petitioner in *Land* was a state prisoner challenging the district court's denial of bail pending its decision. 878 F.2d at 318-19. Without deciding the pivotal question whether the district court had the power to grant bail in such circumstances, the Ninth Circuit cited to *Aronson*, and noted that "bail pending a decision in a habeas case is reserved for extraordinary cases involving special circumstances *or* a high probability of success." *Id.* at 318-19 (emphasis added).

Subsequently, in *Roe,* the state challenged the district court's release of a state prisoner on bail *pending resolution* of his habeas petition. 257 F.3d at 1080. The Ninth Circuit again explicitly declined to resolve whether district courts possess the authority to grant bail pending a decision on a habeas petition. *Id.* Nevertheless, assuming that the district court had such authority, it concluded that it had erred in granting release in that case. *Id.* Specifically, it noted that the district court failed to make the requisite findings that the case was "an extraordinary case involving special circumstances or a high probability of success." *Id.* (citing *Land*, 878 F.2d at 318).

Although it remains undecided by the Ninth Circuit whether this court may release a state prisoner on bail pending a decision on the merits of his petition, the court notes that *all* of the other circuit courts that have decided the issue have concluded that the district court indeed possesses such authority. *See, e.g., Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001); *Landano*, 970 F.2d at 1239; *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986); *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972); *Calley v. Callaway,* 496 F.2d 701, 702 (5th Cir. 1974); *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990); *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985); *Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1981); *Baker v. Sard*, 420 F.2d 1342, 1343-44 (D.C. Cir. 1969). Based on the overwhelming authority in support, the court concludes for purposes of the instant motion

---

footnote, the court added that "there are thousands of prisoners who would have no difficulty drafting a petition for habeas corpus alleging substantial violations of their constitutional rights." *See id.* at n. 2. The court declined to to "open the door to the release of those thousands of prisoners on the basis of mere allegations in their petitions." *Id.*

4

that it has the authority to release Hall pending a decision on the merits.

However, the applicable standards for granting release are not entirely clear since the Ninth Circuit case law on point appears to contradict in part the United States Supreme Court decision on which the Ninth Circuit cases rely. There are two issues raised by the standard articulated by the Ninth Circuit in *Land* and reiterated in *Roe.*

Turning to the first issue, the Ninth Circuit's decisions in *Land* and *Roe* suggest that a petitioner need only show exceptional circumstances *or* a high probability of success. However, the court finds persuasive several district court decisions that recognize that the standard is actually meant to be in the conjunctive and not the disjunctive. These courts have noted, and this court agrees, that

> Although the test in *Land* appears to be different because it requires either special circumstances or a high probability of success, whereas *Benson* appears to require both prongs, *Land* was not an *en banc* decision, and cannot overrule another panel. Possibly, *Land*'s use of the word "or" was inadvertent. Therefore, *Benson* remains good law especially in light of *Aronson*.

*Turner v. Yates*, 2006 WL 1097319 at *1 n.2 (E.D. Cal. 2006); *see also Vaughn v. Adams*, 2006 WL 2585041 at *10 n.6 (E.D. Cal. 2006) (same). Additionally, the majority of circuit courts agree that the standard is conjunctive. *See Mapp*, 241 F.3d at 226; *Landano*, 970 F.2d at 1239; *Martin*, 801 F.2d at 329; *Woodcock*, 470 F.2d at 94; *Calley,* 496 F.2d at 702. Given the uncertainty and the possibility that the Ninth Circuit's use of "or" was inadvertent, this court concludes that for purposes of this motion, Hall is required to meet both requirements.

Second, it is clear that the Supreme Court's decision in *Aronson* requires a petitioner to demonstrate that his underlying claim raises "substantial questions." However, as noted, in *Land* and subsequently in *Roe*, the Ninth Circuit equated the existence of "substantial questions" with a "high probability of success." The two standards appear to be markedly different, though, and that difference may actually dictate the outcome of a motion for

release.[4] The court has discussed below Hall's motion utilizing both standards.

Additionally, the court is unconvinced that the Ninth Circuit's recent decision in an immigration case, relied on in part by both parties, sets forth the standards applicable to this motion for release. In *Nadarajah v. Gonzales*, an immigration judge granted the petitioner asylum. 443 F.3d 1069, 1083 (9th Cir. 2006). Petitioner nevertheless remained detained, and applied for habeas relief pursuant to 28 U.S.C. § 2241, and for his release from custody. *Id.* The district court denied his petition, and also denied the petitioner's motion for release pending appeal to the Ninth Circuit. The Ninth Circuit reversed the district court's denial of habeas relief and ordered the release of the petitioner. *Id.* In doing so, it held that it possessed the authority to order release pursuant to Federal Rule of Appellate Procedure 23(b), and that its determination of the petitioner's motion for release was governed by another immigration case, *Maharaj v. Ashcroft*, 295 F.3d 963 (9th Cir. 2002), which analyzed a motion for stay of deportation pending appeal and applied civil standards for injunctive relief. *Id.* at 1083-84.

Based on *Maharaj*, the *Nadarajah* court applied "the traditional [civil] standard for interim injunctive relief, [according to which] the moving party 'must show either (1) a probability of success on the merits and the possibility of irreparable harm, or (2) that serious legal questions are raised and the balance of hardships tips sharply in the moving party's favor.' " *Id.* (citing *Maharaj*, 295 F.3d at 966). Citing yet another immigration case,

---

[4]The court notes that several of the other circuits appear to interpret the "substantial question" requirement less stringently than the "high probability of success" standard referenced by the Ninth Circuit in *Land* and *Roe*. *See Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir. 1981) (requiring "substantial claims"); *Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir. 1991) (requiring "substantial claim"); *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001) (requiring "substantial claims"); *Baker v. Sard*, 420 F.3d 1342, 1343-44 (D.C. Cir. 1969) (requiring "substantial issues"); *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (requiring likelihood of success on the merits); *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986) (requiring "substantial federal constitutional question"); *but see Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992) (requiring substantial constitutional claims upon which petitioner has a high probability of success); *Glynn v. Donnelly*, 470 F.2d 95, 98 (1st Cir.1972) (requiring a substantial federal constitutional claim that "presents not merely a clear case on the law, but a clear, and readily evident, case on the facts").

the *Nadarajah* court explained that, "these two alternatives represent extremes of a single continuum, rather than two separate tests" and that "the greater the relative hardship to the moving party, the less probability of success must be shown." *Id.* at 1084 (citing *Immigrant Assistance Project of Los Angeles County Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002)).

Not only is *Nadarajah* factually distinguishable because it is an immigration case, but it is also distinguishable because the district court had resolved the § 2241 petition on the merits prior to ruling on the petitioner's release.[5] For these reasons, the court declines to apply the standards set forth in *Nadarajah* to this motion.

**B.     Analysis**

**1.     Substantial Questions/High Probability of Success**

As noted above, Hall was convicted of assault with intent to commit forcible sexual penetration in violation of California Penal Code § 220. That statute provides in pertinent part:

> (a) Except as provided in subdivision (b), any person who assaults another with intent to commit mayhem, rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 shall be punished by imprisonment in the state prison for two, four, or six years.

Section 289, which governs forcible acts of sexual penetration, in turn, provides:

> (a)(1) Any person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years.

Following trial, the jury was instructed with two form instructions, CALCRIM No. 1045, governing forcible sexual penetration, and CALCRIM No. 890, governing assault with

---

[5]Additionally, it is not clear that the standard articulated by the *Nadarajah* court is still viable in light of the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, which overruled the standard previously utilized by the Ninth Circuit. 129 S.Ct. 365, 374-76 (2008) (clarifying that, even where a likelihood of success on the merits is established, a mere "possibility" of irreparable injury will not suffice; rather, irreparable injury must be "likely"); *see also McDermott v. Ampersand Publ. LLC*, 593 F.3d 950, 957 (9th Cir. 2010) (noting that to the extent its "cases have suggested a lesser standard [than *Winter*], they are no longer viable").

intent to commit forcible sexual penetration. CALCRIM No. 1045 was given first, and CALCRIM No. 890 followed.

The trial court gave CALCRIM No. 1045 as follows:

> Damien Hall is charged in Count 1 with sexual penetration by force. To prove that the defendant is guilty of this crime, the People must prove that (1) the defendant committed an act of sexual penetration with another person; (2) the penetration was accomplished by using a foreign object; (3) *the other person did not consent to the act;* and (4) the defendant accomplished the act by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to anyone.
>
> Sexual penetration means penetration, however slight, of the genital opening of the other person for the purpose of sexual abuse, arousal, or gratification. A foreign object, substance, instrument, or device includes any part of the body except a sexual organ. Penetration for sexual abuse means penetration for the purpose of causing pain, injury, or discomfort.
>
> In order to consent, a person must act freely and voluntarily and know the nature of the act. Evidence that the other person requested, suggested, communicated that the defendant use a condom or other birth-control device is not enough by itself to constitute consent.
>
> An act is accomplished by force if a person uses enough physical force to overcome the other person's will. Duress means a direct or implied threat of force, violence, danger, hardship, or retribution that is enough to cause a reasonable person of ordinary sensitivity to do or submit to something that he or she would not otherwise do or submit to. When deciding whether the act was accomplished by duress, consider all the circumstances, including the age of the other person and her relationship to the defendant.
>
> Menace means a threat, statement, or act showing an intent to injure someone. An act is accomplished by fear if the other person is actually and reasonably afraid or if she's actually and unreasonably afraid and the defendant knows of her fear and takes advantage of it. The defendant is not guilty of forcible sexual presentation [ sic ] if he actually and reasonably believed that the other person consented to the act.
>
> *The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the other person consented. If the People have not met this burden, you must find the defendant not guilty.*

*People v. Dillon*, 95 Cal.Rptr.3d 449, 458 (Cal. Ct. App. 2009) (emphasis added).

It then instructed the jury as follows according to CALCRIM No. 890:

> Damien Hall is charged in Count 1 with sexual penetration by a foreign object through force or violence. A lesser included offense of sexual penetration by a foreign object is assault with intent to commit the penetration of the genital opening of another by a foreign object.

8

> To prove the defendant is guilty of this crime, the People must prove that [ (1) ] the defendant did an act that, by its nature, would directly and probably result in the application of force to a person; (2) the defendant did that act willfully; (3) when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act, by its nature, would directly and probably result in the application of force to someone; (4) when the defendant acted, he had the present ability to apply force to a person; and (5) when the defendant acted, he intended to commit the penetration of the genital opening of another by a foreign object.
>
> Someone commits an act willfully when he or she does it willingly or on purpose. The terms application of force and apply force mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind. The touching can be done indirectly or by causing an object or someone else to touch the other person.
>
> The People are not required to prove that the defendant actually touched someone. No one needs to actually have been injured by the defendant's act. But if someone was injured, you may consider that fact along with all the other evidence in deciding whether the defendant committed an assault and, if so, what kind of assault it was.
>
> *To decide whether the defendant intended to commit the penetration of the genital opening of another by force, please refer to the instruction which defines that crime, which is the instruction labeled CALCRIM 1045.*

*Id.* at 458-59 (emphasis added).

Hall raised the same two claims before the state appellate court that he does before this court: (1) that he was denied due process because the trial court's jury instruction on assault with intent to commit forcible sexual penetration, CALCRIM No. 890, failed to inform the jurors that lack of consent was an element of the offense; and (2) that he was denied due process because CALCRIM No. 890 also failed to inform the jurors that even if the victim did not consent, Hall could not be convicted if there was reasonable doubt as to whether he reasonably but mistakenly believed she had consented. The California Court of Appeal denied both claims.

First, the state appellate court agreed with Hall that in order to be convicted under California Penal Code § 220 of assault with intent to commit forcible sexual penetration, specific intent to commit the act without the consent of the victim is required – not just intent to commit the underlying sexual act. *Id.* (citing *People v. Davis*, 10 Cal.4th 463, 509

9

(Cal. 1995)). The court held that CALCRIM No. 890 must be viewed together with all of the jury instructions given, including CALCRIM No. 1045, which governs forcible sexual penetration. The court noted that CALCRIM No. 890 referred the jurors to CALCRIM No. 1045, which defined the crime, "in determining whether [Hall] intended to commit the penetration of the genital opening of [the victim] by force." *Id.* at 1379; *see also* CALCRIM No. 890. The court noted that CALCRIM No. 1045, in turn, expressly stated that in order to convict Hall, the prosecution must provide that "the other person did not consent to the act." Viewing the instructions as a whole, the state court held that:

> A reasonable juror reviewing CALCRIM No. 1045, as instructed by CALCRIM No. 890, would conclude that unless he acted against the will or consent of the complainant, Hall could not have held the specific intent to commit the crime of penetration of the genital opening of another by force, and therefore could not be guilty of the lesser included assault offense as defined in CALCRIM No. 890.

*Id.* at 459-460. The court further noted that the comparable CALJIC instructions, which preceded the CALCRIM instructions "operated in exactly the same fashion." *Id.* at 460 n. 5. Taken together, the state appellate court ultimately found that CALCRIM Nos. 890 and 1045 adequately informed the jurors of all of the elements of the offense. *Id.* at 460-61.

Finally, the state appellate court concluded that Hall failed to preserve for appeal the argument that the pattern jury instruction, CALCRIM No. 890, defining the offense of assault with intent to commit forcible sexual penetration with foreign object, should have been modified to state that the prosecution had the burden to prove the complainant's lack of consent. *Id.* at 461 (noting that "[i]n any event, the issue was not actually "not properly before [the court]]"). It noted that at trial, Hall's counsel requested only an instruction that the prosecution was required to prove beyond a reasonable doubt that he did not actually and reasonably believe the complainant consented, and that there was no evidence that Hall requested a lack of consent instruction at an unreported conference. *Id.* at 461 & n. 7.

The state court also rejected Hall's second argument that CALCRIM No. 890 failed to inform the jurors that even assuming it found that the victim did not consent, he could not be convicted if there was reasonable doubt as to whether he reasonably but mistakenly

10

believed she had consented. Hall had requested the trial court to give jury instructions pursuant to the California Supreme Court's decision in *People v. Mayberry*, with respect to the charged offense and any lesser-included offenses, including the one for which he was convicted. *See* 15 Cal.3d 143, 157 (Cal. 1975) (holding that when the record contains sufficient evidence of a defendant's reasonable belief in the complainant's consent to a sexual act, the jury must be instructed to find the defendant not guilty unless the prosecution proves beyond a reasonable doubt that the defendant did not actually and reasonably believe the complainant consented). The appellate court noted that the trial court gave the instruction with respect to the charged offense of forcible penetration with a foreign object, but declined to give it with respect to the lesser-included offense of assault with intent to commit forcible sexual penetration, apparently finding that CALCRIM No. 890, the jury instruction on the lesser-included offense, "referr[ed] jurors back to CALCRIM No. 1045 [the jury instruction on the charged offense]," therefore "adequately cover[ing] its obligation to instruct on reasonable belief in consent as a defense" to the lesser-included offense of assault with intent to commit forcible sexual penetration. *Id.* at 461.

The California Court of Appeal affirmed the trial court's decision on the issue for three reasons, concluding that: (1) the evidence was insufficient to warrant a *Mayberry* instruction under either section 289 or section 220; (2) if such an instruction was required, the reference to CALCRIM No. 1045 in CALCRIM No. 890 adequately informed jurors that Hall's reasonable belief in the victim's consent was a defense to the lesser included offense of assault with intent; and (3) any deficiency in that regard was cured when counsel for both sides joined in closing argument in explaining to jurors that a reasonable belief in the complainant's consent would be a defense to the lesser included offense. *Id.*

In his current motion for release, Hall contends that his federal habeas petition raises substantial constitutional claims upon which he has a high probability of success. As he did before the state court, Hall argues in his opening motion for release that the jury instruction for assault with intent to commit forcible sexual penetration omitted two

11

elements – the absence of the victim's consent and Hall's specific intent to commit the act without the victim's consent. He asserts that the state court actually conceded that these two elements were omitted, but then failed to proceed with the requisite harmless error analysis under *Chapman v. California*, 386 U.S. 18, 21 (1967). Additionally, in support, Hall notes that several members of the jury actually filed declarations in state court asserting that the only reason they convicted him was because they had been provided flawed jury instructions.

In opposition, the state suggests that Hall mischaracterizes the state appellate court's opinion, and then reiterates the decision in detail, noting that the state court properly found that the combination of the two jury instructions, CALCRIM Nos. 890 and 1045, sufficiently apprised the jury of the elements of the crime. It contends that Hall's claims are neither substantial claims, nor do they have a high probability of success, given the deference AEDPA affords state court decisions.

In reply, Hall again notes the existence of three juror declarations that he submitted in conjunction with his motion for new trial, along with a letter from one of the jurors to the trial judge prior to sentencing (from one of the same jurors who submitted a declaration). He responds that the state court essentially determined that there were seven elements to the lesser-included offense, but then affirmed even though the trial court instructions only included five. He argues that this is not a case involving "ambiguous" jury instructions, but one in which elements of the crime were omitted, and that the United States Supreme Court has never found a jury instruction that omits elements of the crime to be constitutionally adequate. For these reasons, he contends that his claims possess a substantial likelihood of success.

Under AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

12

the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2007).

A state court decision is "contrary to" Supreme Court authority, falling within the first clause of section 2254, subdivision (d)(1) of Title 28 of the United States Code, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Clearly established Federal law" under section 2254, subdivision (d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). This "clearly established" law refers to the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state court decision. *Id.* at 71.

Under the "unreasonable application" clause of Section 2254, subdivision (d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Andrade*, 538 U.S. at 75. However, this standard requires the state court decision to be more than incorrect or erroneous. *Id.* For the federal court to grant habeas relief, the state court's application of the Supreme Court authority must be objectively unreasonable. *Id.* The "objectively unreasonable" standard is different from the "clear error" standard in that "the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." *Id.*; *see Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003). Therefore, it is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous. Rather, the federal habeas court must conclude that the state court's application of federal law was objectively unreasonable. *Andrade,* 538 U.S. at 76; *Clark,* 331 F.3d at 1068.

13

Claims that a state court erred in interpreting state law are not cognizable on federal habeas review. *See, e.g.*, *Little v. Crawford*, 449 F.3d 1075, 1082 (9th Cir. 2006) (claim that state supreme court misapplied state law or departed from its earlier decisions does not provide a ground for habeas relief); *Franklin v. Henry*, 122 F.3d 1270, 1272-73 (9th Cir. 1997) (court was bound by state court finding that a violation of state law had occurred, but still had to consider whether the violation amounted to a federal constitutional error). Federal courts generally are bound by a state court's construction of state laws, *see, e.g.*, *Melugin v. Hames*, 38 F.3d 1478, 1487 (9th Cir. 1994) (federal court bound by Alaska Court of Appeals' interpretation and decision that state statute was properly applied to petitioner's conduct), except when it appears that its interpretation is an obvious subterfuge to evade the consideration of a federal issue. *See Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994); *see also Little*, 449 F.3d at 1083 (petitioner might have been able to show that state supreme court's interpretation and application of state law was constitutional error if it constituted "a fundamental defect which inherently resulted in a complete miscarriage of justice," or "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent"). Federal courts must presume that state courts follow the law, even when they fail to so indicate. *See Poland v. Stewart*, 117 F.3d 1094, 1101 (9th Cir. 1997); *Jeffers v. Lewis*, 38 F.3d 411, 415 (9th Cir. 1994) (en banc).

Recently, in *Waddington v. Sarausad*, the United States Supreme Court emphasized that its "habeas precedent places an 'especially heavy' burden on a defendant who . . . seeks to show constitutional error from a jury instruction that quotes a state statute." 129 S.Ct. 823, 831 (2009) (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). It noted that "[e]ven if there is some "ambiguity, inconsistency, or deficiency" in the instruction, such an error does not necessarily constitute a due process violation." *Id.* (citing *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)). Rather, the defendant must show both that the instruction was ambiguous and that there was "a reasonable likelihood" that the jury applied the instruction in a way that relieved the state of its burden of proving every element of the

crime beyond a reasonable doubt. *Id.* (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). In making this determination, the jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "The pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Cupp*, 414 U.S. at 147).

In *Sarausad*, the defendant was convicted of second degree murder and attempted second degree murder based on accomplice liability under Washington state law for driving a car in which a passenger shot and killed a young woman and wounded a young man. The Ninth Circuit granted habeas relief, determining that the jury instructions given by the state trial court were ambiguous because they lacked "an explicit statement that an accomplice must have knowledge of the actual crime the principal intends to commit." 479 F.3d 671, 690 (9th Cir. 2007), *vacated in part on denial of rehearing en banc by Sarausad v. Porter*, 503 F.3d 822 (9th Cir. 2007). The ambiguity arose because "a crime . . . could mean 'the crime' actually committed by the principal . . . , or it could mean 'the crime' the accomplice had knowledge the principal intended to commit." *Id.* at 690. The Ninth Circuit held that there was "a 'reasonable likelihood' that the jury misapplied ambiguous jury instructions, thereby relieving the State of its burden [to prove] an element of the crimes with which Sarausad was charged," thus constituting an "unreasonable application" of established Supreme Court precedent. *Id.* at 694.

The Supreme Court reversed, holding that the state court's jury instructions were not ambiguous as to the elements required for accomplice liability. *Sarausad*, 129 S.Ct. at 832. It found that the instructions parroted the language of the state's accomplice-liability statute, requiring that the accomplice "in the commission of the crime take action with knowledge that it will promote or facilitate the commission of the crime," and the crime plainly referred to murder. *Id.* However, even if the instruction was ambiguous, the Court concluded that the Ninth Circuit erred in finding that the instruction was so ambiguous as to cause a

15

federal constitutional violation, as required for the Court to reverse the state court's determination under AEDPA. *Id.* at 833. It held that the state courts reasonably applied the Supreme Court's precedent when they determined that there was no reasonable likelihood that the prosecutor's closing argument caused the jury to apply the instruction in a way that relieved the state of its burden to prove every element of the crime beyond a reasonable doubt. *Id.* at 833-35.

However, unlike *Sarasaud,* if the disputed instruction is erroneous on its face, the "reasonable likelihood" standard employed for ambiguous jury instructions is not required. *Ho v. Carey*, 332 F.3d 587, 592 (9th Cir. 2003). If a jury instruction omits a necessary element of the crime, for example, constitutional error has occurred. *Id.* at 593 (finding jury instructions "erroneous" rather than ambiguous, where they included an uncorrected erroneous instruction that second-degree murder could be based on a finding of general intent, but also included an accurate description of the elements of second-degree murder, including specific intent); *see Polk v. Sandoval,* 503 F.3d 903, 910 (9th Cir. 2007) (instruction that eliminated element of deliberation from first degree murder by instructing jury to find willful, deliberate and premeditated murder if it found premeditation violated due process and error was not harmless). Actual prejudice is still required before relief may be granted, however. *See Ho*, 332 F.3d at 595 (citing *Brecht*, 507 U.S. at 637).

A jury instruction that omits an element of an offense is constitutional error subject to "harmless error" analysis. *See Neder v. United States*, 527 U.S. 1, 8-11 (1999) (direct review); *Evanchyk v. Stewart*, 340 F.3d 933, 940 (9th Cir. 2003) (§ 2254 case). Harmless error applies whether the error is characterized as a misdescription of an element of an offense in a jury instruction, or as an omission of the element. *See California v. Roy*, 519 U.S. 2, 5 (1996) (omission of "intent" element from aiding and abetting instruction subject to harmless error analysis where jury could have found intent based on evidence it considered); *Evanchyk*, 340 F.3d at 940-41 (violation of due process based on jury instructions that omitted "intent" element of first-degree felony murder subject to harmless

16

error analysis); *Ho*, 332 F.3d at 595 (violation of right to have jury decide every element of California offense of second-degree murder based on implied malice, because the trial court erroneously instructed the jury that the offense was a general-intent crime, subject to harmless error analysis). The omission will be found harmless unless it "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Roy*, 519 U.S. at 4 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Where the trial court simply fails to alert the jurors that they must consider an element of the crime, the omission is harmless if review of the facts found by the jury establishes beyond a reasonable doubt that the jury necessarily found the omitted element. *See Uchimura v. United States*, 125 F.3d 1282, 1287 (9th Cir. 1997) (applying plain error analysis on direct review of a federal criminal conviction); *see, e.g., Neder*, 527 U.S. at 15-20 (error harmless because "the omitted element was uncontested and supported by overwhelming evidence"); *Lin*, 139 F.3d at 1309 (error harmless if no rational jury would have made the findings without also finding missing element of the crime). But if the reviewing federal habeas court is in grave doubt as to whether the error had substantial and injurious effect or influence in determining the jury's verdict, the petitioner is entitled to the writ. *See Evanchyk*, 340 F.3d at 940-42; *Ho,* 332 F.3d at 595-96 (error not harmless because there was no way of determining whether, in convicting petitioner of second-degree murder, the jury relied on the court's erroneous general-intent instruction or on the correct definition of implied malice).

As noted above, the standards to be applied to the merits of Hall's petition in conjunction with his motion for release are not entirely clear. While the court easily finds that Hall's petition presents "substantial questions," it is unable to conclude, especially at this stage of the proceedings, that the claims carry a "high probability of success" – the standard required by the Ninth Circuit.

First, and importantly, the court notes that neither party has addressed the issue of procedural default. As noted, the California Court of Appeal found that Hall failed to

preserve for appeal his contention that the pattern jury instruction, CALCRIM No. 890, defining the offense of assault with intent to commit forcible sexual penetration with foreign object, should have been modified to state that the prosecution had the burden to prove the complainant's lack of consent. *People v. Dillon*, 95 Cal.Rptr.3d 449, 461 & n.7 (Cal. Ct. App. 2009).

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 750.

Although the court makes no determination at this stage as to whether Hall has procedurally defaulted any of his claims, the potential for a finding of procedural default is a consideration in determining the likelihood of his success on the merits of his petition. However, that is not the only consideration that leads the court to its conclusion that Hall is unable to demonstrate at this juncture a high probability of success.

Contrary to Hall's argument otherwise, the state appellate court did *not* concede that the jury instructions on their face omitted two elements of the offense. The court notes that Hall has made some substantial arguments as to why the state court should have concluded that was the case, but that is *not* what this court's review of the decision reveals. Moreover, the court is unclear at this stage whether it is dealing with an ambiguous instruction or an erroneous instruction that omits elements of the offense. On their face, like *Sarausad,* the jury instructions in this case appear to have tracked the language of the California statutes. 129 S.Ct. at 832. However, the court recognizes that it is Hall's argument that state case law interpreted one of the relevant statutes as including elements

not immediately obvious from the face of the statute itself.

Assuming that the pertinent analysis is for ambiguity, as set forth above, it would appear reasonable and in compliance with the clearly established federal law for the state appellate court to analyze the jury instructions as a whole as it did. In light of the early stage of these proceedings, the uncertainty regarding the nature of the challenged jury instructions, and the very high level of deference afforded to the state court decision, the court is unable to conclude that Hall's claims possess a high probability of success as required for release by the Ninth Circuit, and therefore DENIES Halls' motion.

### 2. Special Circumstances

Given the court's determination above that the requirements for release are conjunctive, its conclusion regarding Hall's likelihood of success precludes relief. Nevertheless, because the court recognizes that there is some uncertainty regarding the applicable standards for release and for purposes of appellate review, the court also addresses the special circumstances alleged in this case.

Hall argues that his ongoing and worsening medical issues, the need to support his three minor children, and the fact that his twenty-one month sentence will have likely been served by the time the court is able to decide the petition on the merits constitute sufficient special circumstances.

In opposition, the state counters that Hall's medical issues do not require release because he has not shown that treatment is unavailable to him through his custodian or that he has been denied medical care while in custody. Regarding his family obligations, the state contends that many inmates have children who are or were dependent upon them, and that it is an "unfortunate scar" that is neither extraordinary nor special. Finally, the state argues that there is nothing to suggest that there will be excessive delay in this habeas case, and that the fact that Hall may have served his sentence is not a special circumstance because even if the court granted habeas relief after his sentence was complete, he would still receive the benefit of being relieved of his parole obligations and

the requirement that he register as a sex offender.

In reply, Hall responds that assuming he serves his entire sentence and is then granted habeas relief, he will have suffered a deprivation of liberty that cannot be remedied. He further notes that it will be of little comfort simply that he is relieved of his parole and/or sex offender registration obligations.

The court is unpersuaded that Hall's medical and family issues are unique from those faced by other prisoners. However, the court finds that the brevity of Hall's sentence, combined with the fact that he had been out of custody pending the entirety of the state proceedings without incident, and the fact that Hall does not appear to present a high risk of flight and/or danger to the community, do constitute exceptional circumstances. *See Boyer v. City of Orlando*, 402 F.2d 966 (5th Cir. 1968) (bail granted where court concluded petitioner should present claims to state courts, despite state courts' precedents denying relief for his claim, and feared petitioner's sentence would run before exhaustion could be completed). Although the court will not release Hall based on these exceptional circumstances in the absence of a showing of high probability of success, it will take these factors into consideration when ruling on any additional request by respondent for an extension of time for briefing, and when prioritizing its review of Hall's petition on the merits once it is fully briefed, and will endeavor to issue its decision on the merits as expeditiously as possible thereafter.

## CONCLUSION

For the reasons set forth above, Hall's motion for release is DENIED.

**IT IS SO ORDERED.**

Dated: March 8, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge